this morning is 523-0968 People v. Cobbs. Arguing for the appellant is Monique Cohen. Arguing for the appellee is Stephanie Lee. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Counsel for the appellant may proceed. Please state your name. Good morning, your honors. My name is Monique Cologne. May it please the court and I'm here from the office of the state appellate defender on behalf of my client Nathan Cobbs. Today, can you speak up a little bit? Okay, I apologize. Today, I will be addressing the first three issues but can answer any questions you may have on the five issues found in the brief. Let me stop you real quick. Just for clarification, who was the presiding judge in this case? Because each of you lists a different presiding judge. As of the top of my head, I do not remember. But if I have time to look at my notes afterwards, I could give you the correct answer. Okay, that's all right. Again, it's not that terribly important. I just wanted to clarify since both of the briefs have two different judges on there. No, I understand. So Mr. Cobbs was convicted of armed habitual criminal, but the state's evidence was insufficient to prove that Mr. Cobbs knew the firearm was in the vehicle. This is a constructive possession case and the state had to prove beyond a reasonable doubt both that Mr. Cobbs had exclusive and immediate control of the area the firearm was found and that he had knowledge that the firearm was in the vehicle. Does he have to have exclusive control of the of the area? Yes, for constructive possession, you need both immediate and exclusive control and knowledge of the presence of the firearm. Okay, where was the firearm located when it was found? Yes, so during a vehicle search, the police found the firearm underneath the front passenger seat. The firearm was in a bag, but the firearm was not visible until the police pulled the front passenger seat all the way up. And so where was the defendant located in the vehicle at the time? Yes, so Mr. Cobbs was seated in the back seat on the passenger side, so he was behind the front passenger seat. Was there anyone else in the back seat with him? No, but there were two other people inside the vehicle that night. There was Marcus Johnson, who was a driver of the vehicle, and there was also Mr. Jaton McCurry, who was seated in the front passenger seat. And was it possible or was there any dispute? I think there was testimony with regard to the accessibility of that bag under the passenger seat from the front. In other words, there were mechanisms and perhaps, you know, the seat adjustment mechanism and wires and cables and things that would prohibit or prevent someone from being able to pull that bag out from under the front seat. Was there any dispute to that testimony? With the wiring, there was no dispute to that, but there was also no evidence that showed how long the firearm was in the vehicle or how long Mr. Cobbs was in that same vehicle before the stop. There was also no evidence that showed who placed the firearm in the bag or who put the bag under that front passenger seat. Well, I'm not asking about that. I'm more focused on the exclusivity nature of the defendant's constructive possession. If he's the only one in the back seat and is the only one who could physically take hold of the gun because the front seat passenger can't do it because of, you know, physical barriers for him to be able to pull that gun out from the front seat, then doesn't that make him the exclusive to being able to control that firearm from the back seat? No, your honor, because Mr. Like I said, I was saying earlier, there was no evidence to show how long Mr. Cobbs was in the firearm and there's case law that shows that just being in the vehicle does not prove possession. Okay. What about his DNA all over the gun? That was in a closed bag. So I mean, it wasn't like he touched it at the very second the police showed up. It was in a closed bag, right? Yes. So his DNA was found on the firearm, but there were also five other unidentified persons. But his was 59% of the DNA found on the magazine, right? Yes, your honor. But the state's expert at trial never made any conclusions to the percentage of that relating to whether that percentage was enough to prove that he possessed the firearm. Also, the state's expert said more than once that she was unable to determine how and when Mr. Cobbs' DNA transferred onto the firearm. And she talked about the multiple possibilities for how Mr. Cobbs' and other people's DNA can be transferred onto an object, one being indirectly and innocently. So that probability or the expert's failure to testify as to how the DNA got there, or whose DNA was most probably, you know, prominent on the firearm, that was left for the jury to decide, right? Yes, your honor. Okay. So with this being said, I would like to briefly conclude my first argument and then move on to my second argument. For the reasons that we talked about, the state did not prove beyond a reasonable doubt that Mr. Cobbs knowingly possessed the firearm, and therefore this court should reverse his armed habitual criminal conviction. Secondly, it was error when the armed habitual criminal jury instructions excluded the essential element that a person must knowingly possess the firearm. At Mr. Cobbs' trial, the two pattern instructions for armed habitual criminal said that the jury only had to find that Mr. Cobbs possessed the firearm and not that he knowingly possessed the firearm. Recently, the appellate court in Hampton and Christmas recognized that this was clear error because Illinois law requires the state to prove that a person knowingly possessed the firearm in order to convict someone of armed habitual criminal. And because it was clear error, the legislature in 2024 even added that missing element to the same jury instructions after Mr. Cobbs' 2023 trial. It was plain error for these instructions to exclude the knowledge element, especially when, as previously stated, the trial evidence related to whether Mr. Cobbs knew the firearm was in the vehicle was closely balanced. Illinois case law also recognized that this is a serious error under the second crime plan error because the jury was not instructed on an essential element of the charge crime. To be exact, the missing knowledge element in the faulty instructions was a central issue in Mr. Cobbs' trial. And accordingly, like Hampton and Christmas, this court should find error in the unsound jury instructions and reverse his conviction and remand for a new trial. If there are no questions, I will move on to my last issue. It was error to give Illinois pattern instruction 3.01 at Mr. Cobbs' trial. Instruction 3.01 states that the state is not required to prove the date of the offense. As this court said in Arrington, the purpose of this instruction is to prevent the defense from arguing the defendant should be committed on a different date than the one charged. But as this court recently held in Arrington, this instruction should only be given when there is a variance between the specific date indicated in the charging instrument and the evidence presented at trial. That was not the case here. The date, July 31, 2022, was consistently used in Mr. Cobbs' indictment and throughout the trial. In fact, the indictment included the same date at trial. At trial, the state's evidence showed that a firearm was recovered from underneath the passenger seat of a vehicle that Mr. Cobbs was a backseat passenger of on July 31, 2022, and trial counsel argued that Mr. Cobbs did not knowingly possess the firearm on that date. At no point was a date of the alleged offense disputed. And to be more clear, counsel argued that the DNA evidence did not prove Mr. Cobbs ever possessed the firearm because it could have been innocently transferred. This is not a variance defense. And the trial counsel in Arrington made the same arguments as counsel did at Mr. Cobbs' trial. And this court again found that it was error to provide this instruction because there was no variance between the specific date and the alleged indictment of the evidence of the trial. And since this was also seen here, this court should similarly reverse Mr. Cobbs' conviction and remand for a new trial. For these reasons, I respectfully ask this court to reverse his conviction and remand for a new trial. Thank you, counsel. Any questions from the court? No questions. Thank you. Capoli. Good morning, your honors. May it please the court and counsel. To answer the question you asked, it actually was Judge Rosenbaum that was the presiding judge. If you look at page R-183 of the record where the trial starts, you'll see that. I think the confusion was that there might have been the other judge at the very beginning for one of the hearings, and they did put that at the top of the transcript, like in the in the COR, but it actually was the Honorable Rosenbaum. Thank you. And I'd actually like to start with the the jury instruction about the knowing issues. I think that the sufficiency of the evidence is actually so overwhelming. I don't really see how it could be found insufficient. As to the jury instruction, without the the word knowing in the IPIs that were existing at that time. First of all, Hampton, which is the primary case being relied on for that issue, what you'll notice is in paragraph 47, it says it was reversed based only on the facts of that case. They were very clear about that. And there, there were very long deliberations. The case was closely balanced. There was no DNA in that case. As a side note, even in Hampton, the court found that the evidence was, in fact, sufficient. So that takes away, you know, from issue, counsel's issue one. But there, the defendant's girlfriend actually claimed ownership of the gun and said she hit it without the knowledge of that defendant. So in that case, there were no IPIs in existence yet. They had to make up new ones. The defendant actually objected and asked for the knowledge to be included. So that makes Hampton very distinguishable. Christmas, which was addressed in the reply brief of counsel, came out in 2025, which is a unpublished case, but persuasive only. Also found the evidence there sufficient. Again, there was no DNA in that case. There, again, the defendant requested the knowledge instruction. The real problem there was that the court, when the defense objected, or sorry, the state objected to the defense saying you need to have knowing, the court actually admonished the jury, implying that no, you did not have to have knowing. And so the one, one of the differences I would have with, you know, counsel's argument is it said, she said that the instructions say that you don't need to have knowing. There is nowhere in the instructions that were given that said you do not have to prove knowing. And in fact, you look at the instructions as a whole, and what they did say is for possession, you need to either have immediate and exclusive control, which would be actual possession, or the power and the intention to control. And there, I don't, there could be no way to have those things without a knowledge that you had those, that you had that. And the other problem is that, especially in a case that is not anywhere near closely balanced, any kind of a sweeping precedent, which would invalidate all armed habitual criminal convictions prior to the IPI change, would be against the presumption that you actually use the IPI instructions. Also for this, because it wasn't requested, what you'd have to find is that somehow the court should have sua sponte given that instruction. And I 3.01. There, the people maintain that it absolutely was within the court's discretion to give that instruction. This is not, this is, this will be an abuse of discretion review, the instruction was requested and then given. The argument on page 280, R-280, defense counsel argued, there was no evidence at all as to when the DNA got on the gun, and when that time coincided with his being, having two qualifying offenses for the purposes of the statute. So it was, in fact, an attempt to utilize the fact that they stipulated to avoid prejudice and then turn it around and say, well, maybe he, you know, possessed it, but we don't, we don't really know when. And as a response, the state absolutely had the right to request 3.01. And the court had the authority to then give it in its discretion. This court's Arrington was different. First of all, there was several errors in there. There was an improper accountability argument with no instruction to support that. There were, the, in that case, so the guns were sort of out in the open in this fleeing vehicle, and the, there were three people in the car, the guns were thrown from the fleeing vehicle. Two of the defendant, or two of the co-defendants said, claimed one of each of the guns and said that was theirs. And then they specifically said it was not the defendant's gun. So, again, there was some explanation that this, this gun was sort of out in the open in this high stress environment being thrown out of a fleeing, you know, fleeing vehicle, where it might have been closely balanced. And here we don't have the closely balanced, we also don't have any chance that we don't have an alibi defense. And we really don't have the prejudicial effect of being misled in his defense. Because, again, all he said was, I never, that was their defense was that he never possessed it really, to the extent that there was a suggestion that he might have, that's what inserted the 3.01. I would say at most, this would be a harmless error, I don't see that it could have been a first, second prong plane error, because it can actually be harmless. The evidence was not closely balanced. And again, defense injected that, that issue. I didn't, a couple of things I wanted to mention, just in case they do get into and rebuttal, as to the state's argument, point you to R229, the expert said, actually touching an item and handling it is the best way to really get DNA on the item. So in fact, that's what the expert said, which means that it is generally by touching, which means anything that the state said in that respect, was absolutely a reasonable inference from the evidence that was presented. And you look at the prosecutor's entire argument, you don't look at the cherry picking different words out of there. But in fact, with his DNA being on there in those amounts, it is a reasonable inference to argue to the jury that he handled it, touched it, possessed it, all of those things. And the habitual criminal arguments, number one, it wasn't this gratuitous, overly repeated, any kind of thing throughout the argument, it was said that he did stipulate, which in fact, he did stipulate to having the qualifying convictions. If you look at the statute, the statute say you commit the offense of being an armed habitual criminal, at least before the revisions, or the amendments. So if you were going to be an armed habitual criminal, the arming part is having the gun, the habitual criminal is defined by having the two qualifying convictions. So I would say that it is in fact, addressed by the statute, but defined by the statute, but there is no way you're going to have a trial where in when the charge is that without mentioning those words, I think reasonable minds could differ whether repeat felony offender will be any different or less prejudicial or different. It's the name of the offense. And at that time, it was armed habitual criminal, and he was convicted of being one. So I think that that argument was 100% appropriate, plus the judge gave a limiting instruction, which would have minimized any prejudice there. I, as far as I don't know if you want me to address the expert in the remaining time, I don't think that, you know, he that the council got all his points out through the people's expert. There is nothing to say that you have to call your own expert. And doing so would have overemphasized the DNA, which is actually the most harmful part for the defense for their case. So I don't think an expert would have helped to the extent that the article was not brought up. Dillard means you raise it below. And then this point, if you were to take judicial notice, you can't speculate. Could I finish my thought or? Okay, you can't speculate that there was some named expert who would have come in exactly that way, testified to that, and it would have changed the result. So even if your honors were to take judicial notice of the article itself, you can't take judicial notice of all that needs to follow from that. If there are no other questions, we would ask this court to affirm. Thank you. Any questions, Justice Barberis and Vaughn? No, no questions. Thank you. Thank you, counsel. Rebuttal. Thank you, your honor. I have a few points on rebuttal. So relating to the second issue, the state discussed that the evidence was sufficient and discussed the facts of Mr. Hampton. But despite that, these facts are different, even though these facts are different. The facts based on whether Mr. Cobbs knew that the firearm was in the vehicle was not overwhelming for the reasons that were stated above. And when the state also discussed that the instructions were enough to show the jury had received the knowledge and intention within the instructions, that is also incorrect because the state or the court in Hampton also rejected the same argument because the jury received both the actual and constructive possession. And with receiving the actual possession instruction, it did not show or did not instruct the jury on the knowledge and intent. And therefore, it did not instruct the jury of the missing element. And in regards to the instruction 3.01 was given at Mr. Cobbs trial, the state also mentioned where they were talking about Mr. Cobbs did not provide an alibi and that he did not mislead. He was not misled in presenting the defense. These two, they were more so referring to the two ways that giving this instruction 3.01 is reversible error, but they failed to mention that the court in Arrington did reverse on different grounds, that there was no variance between the charging instruction and between the evidence presented at trial and as well as seen in Mr. Cobbs. And so this is why this court should reverse based on that argument. And then in regards, excuse me, to the fourth issue and how it was discussing that the state's expert did mention an example on how DNA can be directly transferred. But the state expert also talked about how there are many variables that go into DNA transferring onto an object and how it was really difficult to determine how DNA can be transferred due to so many variables. One being especially that some people are more likely to shed skin cells more than others, and that can affect the amount of percentage that is on the object or can affect the percentage that is on the object. And then regarding the last issue relating to the available scientific evidence and how Mr. the trial counsel was ineffective. The DNA evidence, Mr. or the trial counsel was ineffective because his told trial strategy was to attack the state's DNA evidence and show that it was insufficient to prove that he knew the firearm was or he did not possess the firearm. And excuse me, sorry, that he did not possess the firearm. And within his specific cross of the state's expert, they did not explicitly refute the major contributor or the larger percentage of Mr. Cobb's DNA being found on the firearm. And because of that, he should have presumed that the state would argue that. And with this available scientific evidence of this court possibly taking judicial notice, it's only to show that trial counsel had the available evidence to possibly refute the state's arguments related to Mr. Cobb's DNA being the larger percentage of DNA being on the firearm. And also I would like to briefly conclude related to the DNA state's evidence. The DNA evidence had multiple possibilities like I was stating earlier, but there was no circumstantial evidence to support one possibility over the other. So that is another reason why it was insufficient. I know I ran out of time. You can wrap it up. Okay. Thank you, Your Honor. But like I was saying, with the DNA evidence and there being no circumstantial evidence to prove the possibility for one possibility over the other, the jury could not speculate and determine that one was better than the other, as well as it also speculated that, or it also gave the ability to speculate that there was, oh no, excuse me, sorry. I'm finished. Thank you. Any questions from the justices? Justices Bowen and Barberas? No, thank you. No questions. Thank you. Thank you. The court will take the matter under advisement and issue a decision in due course. Thank you, counsel. Thank you.